IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 09-14374-CIV-MOORE/LYNCH

LITIGATION SOLUTIONS, L.L.C.,

    Plaintiff,

v.

JUSTIN McGONIGAL,

    Defendant.

_____/

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

THIS CAUSE came before the Court upon the Plaintiff's Motion for Preliminary Injunction (dkt # 2). Defendant filed a Response (dkt # 20) and Plaintiff filed a Reply (dkt # 23).

UPON CONSIDERATION of the Motion, the Response, the Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### I.    BACKGROUND

The following facts are taken from the pleadings. This case involves a non-compete agreement signed by the Plaintiff, Litigation Solutions L.L.C. ("LSLLC"), and the Defendant, Justin McGonigal ("McGonigal").[1] LSLLC describes itself as "a licensed private investigative agency. . . providing investigation services, which include surveillance, pre-employment screening, claims investigations, neighborhood canvassing and background investigation, among

---

[1] This action was originally filed in the Middle District of Florida, as Case No. 09-cv-1854-Orl-28GJK. See Verified Complaint (dkt # 1). On November 6, 2009, LSLLC filed an unopposed motion to transfer this case to the Southern District of Florida (dkt # 10), which was granted (dkt # 11). This case was transferred into this district on November 10, 2009 (dkt # 11). This Court subsequently issued a paperless order (dkt # 15) setting a briefing schedule for the instant Motion.

others." Pl.'s Mot. ¶ 3. LSLLC offers these services in connection with workers' compensation, automotive, property, liability and insurance-related claims. Pl.'s Mot. ¶4. Its clients include "insurance carriers, employers, attorneys, insureds, third party administrators, and vendors." Pl.'s Mot. ¶ 5.

McGonigal is the former shareholder of a Florida investigative services business called RSight, Inc. ("RSight"), which he operated with Steven Cassell ("Cassell").[2] McGonigal is also the President of Rhino Protective Services and Investigations, Inc. ("Rhino"), a position he has held since 2005. On July 17, 2009, LSLLC and RSight entered into an Asset Purchase Agreement ("the Agreement") whereby RSight sold substantially all of its assets to LSLLC. See Agreement, Pl.'s Ex. A (dkt # 1-1). Pursuant to the Agreement, McGonigal received $1,800,000.00 in consideration, and agreed not to participate, directly or indirectly, in any business that competes with LSLLC for a period of two years from the date of the agreement. Specifically, the non-compete provision of the Agreement states that McGonigal will not directly or indirectly participate in any entity that engages in "Restricted Business."[3] The Agreement further provides that McGonigal will not solicit the employment of former employees of LSLLC

---

[2] Cassell is now the Senior Vice President of LSLLC.
[3] The Agreement defines "Restricted Business" as

> any business that provides any of the following services: case management; independent medical review; independent medical examination; medical bill review and/or preferred provider organization services; record procurement and/or subpoena services; investigation and/or surveillance services; special investigative unit services; testimony support services; telephonic case management services; utilization review/utilization management services; medical bill review technology; integrated managed care services; pre-certification, concurrent review and retrospective review services; benefits determinations; quality of care, pharmaceutical, forensic and experimental and investigational treatment reviews; criteria and standards development and enhancement for healthcare systems plans and programs; and resolution of disputes regarding healthcare decisions or plan administration.

See Agreement ¶ 7, Pl.'s Ex. A (dkt # 1-1).

or RSight, and that McGonigal will not solicit the business of any former client or customer of LSLLC or RSight. See Agreement ¶¶ 8, 9 Pl.'s Ex. A (dkt # 1-1).

Notwithstanding these restrictions, the Agreement contains a carve-out permitting McGonigal to continue to own and operate Rhino; to compete with LSLLC through Rhino, including solicitation of former clients and employees; and to engage in the following activities:

> 1) the teaching of any of the following to the general public, governmental agencies, investigation companies and security companies: a) certifications required under Florida Statutes Chapter 493, b) vendor management, c) case management, and d) security, investigation and surveillance techniques; 2) telephonic case management (updating clients) directly or indirectly; 3) background investigations; 4) canvassing; 5) surveillance; 6) subpoena services; 7) testimony support; 8) security and 9) setting up and maintaining booths to promote any of the foregoing at trade conferences and seminars.

Agreement ¶ 7, Pl.'s Ex. A (dkt # 1-1). The Agreement provides, however, that "McGonigal and Rhino will not offer or perform Items 2 through 7 above in any workers' compensation, liability and/or health insurance or insurance fraud markets." See id. Lastly, the Agreement provides that it may be enforced through an application for injunctive relief in a court of competent jurisdiction. See id. ¶ 10.

Sometime after the execution of the Agreement, LSLLC became aware of activity by McGonigal that, it believed, violated the non-compete provisions of the Agreement. On September 17, 2009, LSLLC sent McGonigal a cease and desist letter stating that is "has very recently learned that you [McGonigal] may be starting your own company in direct contravention of the terms agreed to in the [Agreement]." See Letter, Pl.'s Ex. C (dkt # 1-3). The letter reiterated the terms of the Agreement, and provided an acknowledgement form on which McGonigal was asked to affirm that he had abided by the Agreement. The Parties apparently dispute whether McGonigal ever responded to the cease and desist letter.[4]

---

[4] LSLLC contends that McGonigal "refused and/or failed" to execute and return the acknowledgment form attached to the letter. See Compl. at ¶ 30. McGonigal avers in his

3

LSLLC filed its Complaint in this case on November 2, 2009, alleging that McGonigal had breached the Agreement (Count I), and seeking injunctive relief and specific performance to enforce the Agreement (Count II). The same day, LSLLC filed the instant Motion, alleging that McGonigal, through Rhino, is violating the Agreement by advertising restricted services on its website and by soliciting former employees of LSLLC.[5] LSLLC seeks a preliminary injunction restraining McGonigal from violating the terms of the Agreement during the pendency of this action. McGonigal responds that he has not violated the Agreement, that LSLLC has not demonstrated that it is entitled to a preliminary injunction, and that LSLLC is in any event barred from seeking a preliminary injunction by the equitable doctrine of unclean hands.

## II. ANALYSIS

### Preliminary Injunction Standard

To obtain a preliminary injunction, a party must establish four elements: 1) a substantial likelihood that it will prevail on the merits; 2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; 3) the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendants; and 4) granting the preliminary injunction will not disserve the public interest. See Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994). Because a "preliminary injunction is an extraordinary and drastic remedy," it is "not to be granted until the movant clearly carries the burden of persuasion as to

---

Response that he provided a timely response stating that he was not in violation of the agreement, see Def.'s Resp. in Opp'n at 9, but his Answer with respect to this contention is "[w]ithout knowledge, therefore denied." Answer, ¶ 30. If McGonigal did respond to the cease and desist letter, that response is not to be found in the current record of this case.

[5] LSLLC's Motion and Complaint also make various allegations against Sally Anleu ("Anleu"), a former LSLLC employee. LSLLC alleges that Anleu is McGonigal's long-term, live-in girlfriend, and that she has started her own investigative services company that is or may become a competitor to LSLLC. Anleu is not a party to the Agreement or a named defendant in this action, and therefore, her alleged conduct is only relevant to the extent that it implicates McGonigal's indirect violation of the Agreement.

the four prerequisites." Id. (quoting Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990)).

### Likelihood of Success on the Merits

Pursuant to § 542.335, Florida Statutes,[6] restrictive covenants are valid if the party seeking to enforce them can prove: "(1) the existence of one or more legitimate business interests justifying the restrictive covenant; and (2) that the contractually specified restraint is reasonably necessary to protect the established interests of the employer." Autonation, Inc. v. O'Brien, 347 F. Supp. 2d 1299, 1304 (S.D. Fla. 2004) (citing N. Am. Prods. Corp. v. Moore, 196 F. Supp. 2d 1217, 1228 (M.D. Fla. 2002)). If the movant makes a prima facie showing of these elements, the burden shifts to the opposing party to show that "the restriction is overbroad, overlong, or otherwise not reasonably necessary to protect the established interests of the employer." Id. (citing § 542.335(1)(c), Fla. Stat.). Under Florida law, "legitimate business interests" include trade secrets, valuable confidential business information, substantial relationships with specific prospective or existing customers, customer goodwill, and extraordinary or specialized training. See § 542.335(1)(b), Fla. Stat. Further, Florida law requires courts to construe restrictive covenants "in favor of providing reasonable protection to all legitimate business interests established by the party seeking enforcement." See Autonation, Inc., 347 F. Supp. 2d at 1304 (citing § 542.335(1)(h), Fla. Stat.).

LSLLC pleads that its "current and prospective relationships with clients" qualify as a legitimate business interest justifying the restrictive covenant here. Pl.'s Mot. at 11. LSLLC also suggests in passing that preventing "loss of goodwill" is another of its legitimate business interests. Pl.'s Reply at 10. In support of its claim, LSLLC cites a host of statements on Rhino's

---

[6] Florida state substantive law applies to this case, as federal jurisdiction is based on the diversity of citizenship of the Parties. The Agreement also includes a choice-of-law provision specifying that it is to be governed by Florida law. See Agreement ¶ 17, Pl.'s Ex. A (dkt # 1-1).

5

website and in McGonigal's Response that, LSLLC alleges, are proof that Rhino advertises and provides services prohibited by the restrictive covenant. LSLLC has also submitted declarations signed by its Senior Vice President, Steven Casell, stating that Rhino's services and advertisements are "clearly aiming at [LSLLC's] clients and potential clients." Cassell Declaration ¶ 16 (dkt # 23-1).

Aside from these general and conclusory statements, however, nowhere does LSLLC discuss which particular customer relationships or goodwill the restrictive covenant is designed to protect. Significantly, § 542.335, Florida Statutes, does not state that customer relationships generally qualify as legitimate business interests. Rather, the statute requires a showing of substantial relationships with specific customers.[7] See § 542.335(1)(b), Fla. Stat.; see also Anich Indus., Inc. v. Raney, 751 So. 2d 767, 771 (Fla. 5th Dist. Ct. App. 2000) (holding that employer had not proven a legitimate business interest where there was insufficient evidence of a "relationship that could be construed as 'substantial' within the meaning of the statute").

In contrast, in recent cases where courts issued preliminary injunctions to enforce restrictive covenants, the party seeking enforcement typically provided greater evidence of a legitimate business interest than what LSLLC has provided here. See Milner Voice and Data, Inc. v. Tassy, 377 F. Supp. 2d 1209, 1218 (S.D. Fla. 2005) (Moore, J.) (finding substantial customer relationship proven where evidence showed that former employees "were responsible for all [employer's] Florida client relationships and had access to confidential information regarding all of these clients"); N. Am. Prods. Corp., 196 F. Supp. 2d at 1228 (finding substantial customer relationship proven where former employee had "gained substantial

---

[7] This inquiry focuses on the employer's customer relationships. "[A]n employer need not prove that its former employee himself had a substantial relationship with any particular customer." See Milner Voice and Data, Inc. v. Tassy, 377 F. Supp. 2d 1209, 1218 (S.D. Fla. 2005) (Moore, J.).

6

knowledge of his former employer's customers, their purchasing history, and their needs and specificiations"). LSLLC may well be able to prove the existence of a legitimate business interest at the summary judgment phase or at trial, but at this early stage of the proceedings, it has not yet adduced sufficient evidence of which specific, substantial customer relationships or what kind of customer goodwill the Agreement is designed to protect.[8] Accordingly, it has not clearly carried its burden of demonstrating a substantial likelihood of success on the merits, and is not entitled to the extraordinary remedy of a preliminary injunction.[9]

### III.   CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the Motion for Preliminary Injunction (dkt # 2) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 11th day of January, 2010.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record

---

[8] Of course, LSLLC is not limited to only these two kinds of legitimate business interests, but may provide proof of any legitimate business interest listed under § 542.335(1)(b), Florida Statutes. These two interests are simply the only two that LSLLC has discussed in its pleadings.

[9] Because LSLLC's failure to prove a substantial likelihood of success on the merits dooms its attempt to obtain a preliminary injunction, this Court declines to reach the remaining three elements of the inquiry, as well as McGonigal's unclean hands defense.

7